You can begin, and if you want to reserve time, please watch your clock. Yes, I do, Your Honor. My name is Mark Ray, and spelled W-R-A-Y, and I represent the appellant and the defendant below. I would request to reserve, you know, three or four minutes, three minutes or four at the end, and I'd appreciate that. The contract between the parties in this case, as you know, in our papers, is subject to at least two reasonable interpretations, and it's a matter of well-settled Nevada law that when that situation exists, a summary judgment interpreting that contract is inappropriate. Why? Because, of course, the court needs to consider other evidence and to interpret what the really meaning is because it's ambiguous, and these are well-settled principles. We believe respectfully in the district court that not only did we present another reasonable interpretation of this agreement to the court, but we offered a better and more reasonable interpretation than the court settled upon at the end. This was a standard, normal real estate agreement negotiated between sophisticated parties represented by real estate lawyers, and they had, of course, the key provisions in there regarding due diligence, which is key to any transaction where a buyer is trying to acquire property. They have that opportunity to look at the property and the circumstances of the title and decide if they want to proceed. The problem in this case arose when the district court decided that that period of time for due diligence simply meant that First American had a or, excuse me, their subrogator, which is Greystone. Greystone had the opportunity to decide whether to go forward, but left out the part that at the end of that due diligence period, what happens? A decision has to be made whether to proceed. You make that decision and go forward from that point. Under the agreement, it's very clear in Section 6.01, and of course you've seen this, but just let me highlight this. Upon buyer's approval of its feasibility review, buyers shall be deemed to have approved those covenants, conditions, restrictions, rights of way, easements, reservations, and other matters of record, as disclosed in the title report, which is the commitment, the preliminary title report, that had been provided by First American. And indeed, in this case, that process was followed, as it is in all of these commercial real estate agreements with parties represented by counsel. And at the end of that time, the decision was made by Greystone. Thanks to the indemnity provided by First American to Greystone, the decision was made to proceed. Let me ask you, counsel, what admissible evidence are you going to offer a trial to establish that, in fact, the contractual allocation of risk was to be borne by the buyer and not the seller? What admissible evidence? So, in other words, you're saying that this should not have been decided as a matter of law by the district court judge, who found that the language was unambiguous. So your position is, now, the risk of loss belonged to the buyer, not the seller. So what evidence did you proffer to the district court judge that you will offer at trial? Your Honor, there's a lot of evidence on that issue. What admissible evidence? Yes, I'm sorry. Admissible evidence, for example, that on December the 3rd, when the exception to Title No. 37 came up, Your Honor, the parties, through their counsel, spent the day deciding what to do about Exception 37. And at that time, First American, Your Honor, knew that under Exception 37, if they approved the matters of record, which included that exception, they knew that by approving it, they would be taking the risk of that payment not being made under Exception 37. Yeah, what I understand, and of course you may not have thought it was important to set forth all the admissible evidence, but I understand from the briefing and from what I read in the transcripts that counsel for Commerce said they thought the obligation was satisfied. That's all they said. And then retrospectively, when a deposition was taken, counsel again for Commerce said, in the deposition, we knew that this was a payment obligation of Commerce's, and it wasn't paid. And it was our obligation, Commerce's obligation, to pay it. So how did, during these negotiations, that risk allocation change to that of the buyer? Because under Section 6.01 that I just read, it is an exception to title. And this is the key point. At the end of the 30 days, if you approve the title matters and you go forward at that point, that's at your risk, at the risk of the buyer, not the seller. The seller may have any obligations, whether deeds of trust, Your Honor, assessments, or any of the things that could be prorated, all those kinds of things. Okay. And one of those was that the seller is obligated to pay monetary liens. So whatever else was set forth in 809, I understand that your client has a different view as to whether or not 809 is clear and unambiguous. But still, there was the obligation of Commerce to pay monetary liens. Why isn't this a monetary lien? It's not. One million dollars that all of a sudden is made clear within 24 hours of the closing, and your client is not obligated to make that payment without the contract making clear that this was indeed an obligation to be borne by the buyer. Absolutely, Your Honor. That's exactly right. That's exactly what I'm saying. It was not a monetary lien. Show me in the contract. Let's start there, where that obligation is clear in the language of the agreement. Okay. In Section 6.01, it says whatever is listed as a title exception during the due diligence period, you have the opportunity to object and not go forward with the transaction based on the fact that in the title report there's an exception that hasn't been removed. But if you approve those exceptions. But at the time of that, the title exception, it was essentially First American. It was essentially removed. And it wasn't as if the buyer accepted the obligation. And it certainly was a monetary lien, right? No. Why not? I'm sorry, Your Honor. It was not a monetary lien. Well, because a monetary lien requires security. It's collateral. There's no definition of that. A lien is essentially a charge. It's not a lien. There's a mention of mechanics liens, but then there's monetary liens. Why is this not a lien? Because it was not – there was no security in the property granted to the city for the C1 channel, Phase 1 impact, Phase 3 impact fee. Am I correct, though, that the city refused to issue permits for building? Yes. Because it had not been paid. So, in other words, the property and the project was rendered impossible unless those fees were paid. I don't think you understand the facts the way I do, respectfully. I believe that what happened was the city has essentially a restriction on title, which means that they don't have to issue a building permit for something unless that fee is paid. And that was their remedy, and that's exactly what they did. When, after this transaction closed, the new owners of the property, which included Dunhill and Greystone, went to develop their properties, the city insisted that the fee be paid as a condition of issuing a building permit, which was the remedy. Why? Because they couldn't foreclose. There was no monetary lien. Had the city wanted to treat it as a monetary lien, they would have had to have a lien in the form of a consensual lien on the property, like a deed of trust, but that's not what this represented. And, therefore, the city could not foreclose, and they didn't try to. They didn't even try to sue for the monetary amount, because the remedy that they had was to have this restriction on title against whoever owned the property. And remember, in the court's order and in FATCO's brief, First American's brief, what they say, Your Honor, is very definitely, yeah, the lien, I mean, excuse me, not the lien, the amount that is this obligation had to be paid by somebody, not by Commerce, not by First America, not by Greystone, not by Dunhill, but it had to be paid by somebody. So it was an ability for the city to keep anyone who wanted to develop the property from getting a building permit. That's the way it was structured. This is what I'm reading from the contract. All of this information that you're proffering that would be admitted, in your view, at trial, all of this occurred after the execution of the contract. During the performance. There was nothing, no one ever from the seller or the seller's attorney ever mentioned this. All of this occurred within 24 hours of the close. And the provision that I think is significant, and tell me I'm wrong, the seller shall remove at its sole expense before closing and deliver property conveyed free and clear of any and all mortgages, which you mentioned, it's not a mortgage, mechanic liens, it's not a mechanic lien, or other monetary liens. And from what you've told me, it is a monetary lien, because the city, six months later in July, refused to offer them, or basically placed a lien on the property, said, we're not going to give you building permits. Right? I believe, Your Honor, that even the district court judge agreed with our position that it was not under that clause. In the judge's order, Your Honor, the district court judge, who sided with First American's interpretation of everything else, did not use that as a basis for saying, oh, this is really a monetary lien in the first place. Everyone agreed. And you believe, okay, so I will accept that, but is it your position that under the law it was not? Yes. Why? What in the contract indicates that? And I didn't see anything in the case law that defined a monetary lien as not something that was required to be paid at the time of closing. We did, in our brief, cite Nevada law on the difference between a lien and something that's not a lien, and we put it in the end of our argument, if you would go to it. I'm sorry, I don't know the page right now. We talked about the fact that there was this other argument, the one you're talking about right now, that was made by First American before the district court, and we said everyone knew that it was not, it did not fall under that, you know, what they called, I forget, safety valve argument that they were using, and the district court, to its credit, said no. That provision about payment of monetary liens, removals of deeds of trust that are recorded against the property, is not applicable to this contract, this private contract. It did not have any clauses in it that said that the property was posted to a trustee or to anyone in favor of the city to foreclose, which is what a lien's, the power of a lien is. It's the right to foreclose on the property that's the collateral. May I, I'll just, I know that I was going to reserve time, but I would like to satisfy you that this issue had been addressed and had been rejected even by the district court as a plausible basis for the decision that it made. In fact, it wasn't mentioned. Okay. If we can look at Section 8.09B in the contract, and it says a seller at the closing shall pay real property taxes, bonds, assessments, et cetera. The term assessment, if you just look at the dictionary definition, it's a pretty broad term. Why wouldn't the impact fund fees be included as an assessment? Because an assessment is a thing that has a very definite meaning under Nevada law, under Nevada statute. An assessment comes from an ordinance adopted by a county or city, municipality or a county, and under that ordinance they set up a district, and you can assess people. That is required installment payment. Well, the contract then also says SIDs, LIDs, and we assume that words aren't, no word is superfluous and not duplicative. So that would presumably cover the SIDs, Special Improvement District, the LIDs, but also has assessments, which, you know, why wouldn't an impact fund arguably be included in that? I put a section in the brief on this, and you read it, and I know you all read it, so I just want to say that an assessment in Nevada law means something specific. It's an authority granted by statute by the Nevada legislature to a local municipality to create a district, to assess the people within that district, require them to make installments of payments on a periodic basis to pay their assessment. So it's an ongoing current obligation created by statute. Of course, we're dealing with a private contract, Your Honor. I mean a private contract between the city and us for a fee, which was eight years old when this new transaction closed, and that's why the assessment doesn't apply. The fact that the court, in my view, called this C-1 Phase III impact fee an assessment shows that the court did not have an appreciation or had a misapprehension of how assessments work and what the word means to two Nevada real estate lawyers that wrote this contract, very sophisticated, experienced people who knew what an assessment was and said, we're talking about taxes, we're talking about assessments. Well, then why did they use the word, why did they reference Special Improvement District and LID fees? Because it's an assessment. Well, I know, but the contract lists them separately. Why include SIDs, LIDs, if they're included in their assessment? They're given examples. Well, they didn't say examples, assessments, including but not limited to SIDs, LIDs. They said assessments, LID, slash SIDs. I think the structure of this sentence is fairly read as saying we want a direct escrow, and that's what the topic of this whole thing was. We want a direct escrow, how to proceed with prorations, and we want all the things that can be prorated to be prorated by you. Here's what examples of things are that are prorated, and any other obligations, that's how they worded it, to make sure that escrow is instructed. That's what this clause was about. It wasn't even directed towards First American or Commerce. It was directed towards the escrow. But the language, which is the most difficult language, I think, for your client, is the language that says all payments that were accrued must be paid. It doesn't say all payments that are to be prorated must be paid, and that the interpretation is this is to be interpreted broadly. So unless there's something in the contract, it seems to me that what you're telling me is that the interpretation of the contract was incorrect by the district court judge, and all you're going to offer at the time of trial is your particular interpretation of the contract based upon what you believe to be Nevada law is that this is not an assessment and that any issue that's raised at the time of closing is the responsibility of the buyer. Am I right that your position is you just look at the contract? Because if you look at the facts, then Mr. Rice made clear that he thought the obligation was paid at the time of the closing, and then retrospectively he said, yes, this was Commerce's obligation. Yes, it was to be paid. Yes, it wasn't paid. So what's your evidence? Okay. Your Honor, I put down my evidence in paragraph 38. May I just go through it? One thing we wanted to offer was that when First American approved it on December 3rd, and we're talking about December 3rd is where most of the evidence comes from, it was a business decision to assume the risk. Their own experts said that's what they were doing. They had the right to do it. I'm not saying they didn't. But once you do it, it's over. They said they will admit this was our obligation and we assumed it, and therefore it is our responsibility under the contract? That's their admission? Yes. Their conduct. Yes, Your Honor. Okay. You said they said, so I'm confused here. Conduct. What was the conduct? Well, the conduct on December 3rd, First American, upon inquiring as to the status of this item, number 37, which they had neglected for the previous 29 days, on December 30th, December 3rd, can be very important. And as you know, that's when the attorneys started talking all day long, and there's a lot of evidence about this. What conversation is going that you are going to offer where, say, for example, Bayer admitted, oh, yes, this is our obligation, but we're just going to go ahead and close anyway? No one said in their testimony, we admit it was our obligation. That's not what the plaintiffs said. What they said was, we need you to indemnify us against this obligation, which means they knew that they had the obligation flowing to themselves as a result of approving this. That's why December 3rd was so critical. That's what happened on December 3rd. Everyone went to general quarters, didn't they? Why? Why was it so important? Because approval meant something. It meant a shift between the seller and the buyer as to who is going to be It was a matter of record, and surely this was a matter of record. I know you said First American withdrew or eliminated it, took it off the title report, but that doesn't mean it's not of record. It's still in the recorder's office. Anyone who looks at the property is going to see that's a matter of record to this APN. And I suspect that you know the facts better than I do, and I'm very interested in what you have said. But as I understand it, when the attorney for First American or for Greystone, I think it was Mr. Bennett, tried to get a hold of the attorney for Commerce, and the attorney for Commerce said something about, we thought the obligation had been paid. And the attorney for First, I'm sorry, it was actually Greystone, tried to call him back. He never returned the call. Okay. What happened was they both talked about it. Both attorneys talked about it on December 3rd. Nobody said on December 3rd, Your Honor, Section 8.09 is clear as a bell. This is a responsibility to the seller. End of story. That's not what anyone said. Everyone knew that wasn't the case. Why does that matter? Because it's an admission. As a matter of fact, if the Court finds that the contract itself is unambiguous, it doesn't really matter what people at the time thought. You've got parole evidence problems. You've got other problems. I mean, I think to get this into evidence is a problem for a trial. May I just say this was decided, Your Honor, on summary judgment. I understand. And, therefore, as you well know, there's only certain things you can do. There's no cross-examination. You just decide whether there's an issue for trial, of course. So, obviously, Your Honor, I believe this judge was trying to decide an issue because of the reason you said, oh, this is my function. I'm a judge. I get to interpret contracts. However, if there's two reasonable interpretations of that contract, Your Honor, there shouldn't have been a summary judgment. There could have been some other disposition but not a summary judgment. And I think the factors that show what was happening there was we were beginning COVID. We couldn't get a trial date that would run, that would go. We had four or five trial settings before the judge said, oh, I'm going to change my mind on summary judgment. So that's not evidence. No, no. I'm asking a different question, but that's okay. I'm taking up your time. I'm so sorry. Go ahead. Go ahead. Please. I think we are way over time, but it's because we asked you a lot of questions. But I'll give you two minutes of rebuttal. Well, thank you very much for that consideration. And thank you for allowing us to have oral argument today. I appreciate it. May it please the Court, good morning. My name is Kevin Sinclair. I represent the Appellee First American Title Insurance Company. Judge Lee, I wanted to address one of the questions that you posed to my colleague, Mr. Wray, because I don't believe that the answer that he gave was the correct answer. You asked this question about the definition of an assessment. And Mr. Wray answered that an assessment is this very specific thing. It must be created by way of a municipal ordinance or something of that nature. That's not the case under Nevada law. You have private assessments. You have them all the time. Common interest communities, or HOAs, are quite common in Nevada. HOAs will have the assessments all the time. That is a quintessential example of a private assessment. So by no means are assessments limited to the one example proffered by my friend, Mr. Wray. As you noted, the definition is quite broad. There's baked into Commerce Associates' argument an assumption that if something falls within the ambit of Section 6.01 of this agreement, it is necessarily excluded from Section 8.09B. This is a false dichotomy. The HOA is a perfect example of this. All HOAs are created by the recording of a document, a declaration of covenants, conditions, and restrictions, or CC&Rs. That is obviously a matter of title. In fact, that is specified as one of the things listed in 6.01 as the things that might show up. It lists covenants, conditions, and restrictions. However, the recorded declaration of CC&Rs is what gives HOAs the rights to levy assessments and creates the assessments. So you can simultaneously have something recorded against the title, which would be identified under 6.01, and then it could also lead to an assessment under 8.09B. And so we don't see these two things as mutually exclusive, and there's nothing in the contract that says that they are mutually exclusive. Again, running with the example of the HOA, if, hypothetically, the preliminary title report showed a declaration of CC&Rs, then the buyer would have had until 30 days after the contract was signed to agree to move forward subject to that declaration of CC&Rs. But that does not mean that if there were assessments due and owing from before the ultimate close of escrow, that those were not still the obligation of the seller. And if there — if it subsequently came out that there was some unpaid assessment that had accrued before the close of escrow but for whatever reason had not been paid, there's no reasonable basis to dispute that that would still have remained the obligation of the seller. In fact, we have that sentence at the very end of 8.09B. Let me ask a question, though, on that. Of course. The argument that Mr. Ray is making is that 8.09 is not applicable or the provisions of it aren't applicable because this was not to be prorated. It was due. So that 8.09 is not — it doesn't — your argument about it being an assessment doesn't apply. Why not? Sure. Let me address that. The word prorate means to assign proportionally, right? That's a rough dictionary definition. Forgive me. I didn't bring Merriam-Webster's with me today. But would you agree that that's a rough dictionary definition? Well, we prorate things all the time where one party is ascribed 100 percent and the other party is ascribed zero. So, for example, if when I get home today I'm leaving the airport and someone rear-ends me at an intersection, my insurance company and their insurance company are going to prorate liability between the two drivers to figure out which insurance company is going to pay for that. And if I'm just sitting there minding my own business and getting rear-ended — Yeah, I understand your argument. But he's saying that the caption at the top says something that is to be prorated. And this was something that was due before. So the position of Mr. Ray is it's not, it doesn't apply. And, of course, where you have taxes, then that's obviously a situation that commonly is prorated. Sure. If you have — let's take the example of taxes. But I'm asking to look at the contract and tell me why the identification of proration doesn't apply to only those matters that had to be prorated like taxes, which this is not. It was a prior obligation, payment obligation. Sure. So if you look at 8.09B, it lists various items that were subject to that section. Real property taxes, bonds and assessments, SIDs, LIDs, any assessments with respect to any association. If there were tax payments, all those things are sometimes charged on regular intervals, and sometimes they're not charged on intervals. So, for example, if a tax payment had been due before the close of escrow but not paid, that would have still been prorated to the seller. If it had not yet been due but it was for the portion of time after the last payment had been made, that would still get prorated to the seller. So just because a payment — just because the deadline to pay arose before the close of escrow doesn't mean it's exempt from proration. If, for example, there was — In other words, proration means it may or may not exist beyond the date of the close. So merely because it was obligated before, and once it's paid, it will not be paid in the future like taxes. Sure. So essentially, it is something that could be prorated if it were a tax, but it won't be because it's owed before. So you're just answering the question that it's not proratable. No, it is proratable if, for example — So the C-1 Channel Phase III agreement imposed two deadlines to pay the C-1 impact, the in two tranches, right? May 31st of 2005, November 30th of 2005. If we change the fact pattern a little bit and we move the close of escrow to in between those two dates, then commerce would be here arguing that it was only on the hook for the first half and the buyer was on the hook for the second half because the second half was due after the close of escrow. If we change the fact pattern further still and make the close of escrow before May 31st, 2005, then, again, commerce would be here arguing, hey, we have no liability. This is a payment obligation that accrues after the close of escrow because both deadlines are after. But the facts in this case is it was due 2005, two separate payments. So it was due. And maybe the other argument that Mr. Wray has made is that it was delinquent. Well, if it's delinquent, then it's — just because it's delinquent doesn't mean that it's not their obligation to pay it. Under what portion of the contract?  So the — if I read the third sentence of 8.09B, it says, this section shall be interpreted broadly toward the end that any taxes, assessments, bond obligations, or other payment obligations accruing prior to the close of escrow shall be the responsibility of seller, and any taxes, assessments, bond obligations, or other payment obligations accruing after close of escrow shall be the responsibility of buyer. Accruing is when the obligation must be paid. And so if it had to be paid before the close of escrow, it is the responsibility of the seller. I understand your argument, and that was the position that the district court took. But what I'm asking you is to respond to what Mr. Wray's argument is, which is it was not to be prorated because it was a prior obligation, correct? It was already due. And he also claims that it was delinquent because it wasn't paid in 2005. So that it doesn't — the general provision relied on by the district court is not applicable, that all payments had to be made. I would respond to Mr. — well, I'd respond to that characterization of the contract that a delinquent payment is outside of the scope of 8. — sorry. To the extent someone were to argue that a delinquent payment is outside of the scope of 8.09B, I would respond by saying respectfully that interpretation is not supported by the plain language of the text of 8.09B. And why? Because, again, the sentence I just read says any obligation accruing. It doesn't say any obligation accruing but not yet delinquent. It doesn't say — it just says any obligation that has accrued prior to that date. So despite the fact that at the beginning it says non-delinquent, at the beginning of that, of 8.09, that the language, the very strong language at later, about the third sentence down, you think is controlling? I don't think the two are inconsistent because, for example, in — so by including the phrase non-delinquent, that expands the scope of what must be paid. It doesn't contract it. In most states, including California where we're currently located, you pay your property taxes in two tranches for the entire fiscal year. You have a tranche that's due in November and a tranche that's due in February. But the tranche that you're paying in November covers the first half of the fiscal year from July 1st until December 31st. And so if you were to sell a property between July 1st and the November payment deadline, even though those taxes are non-delinquent, there's still a portion of them that is allocable to the seller because the tax covers that full period. So the inclusion of the phrase non-delinquent does not narrow it. It broadens what the seller must pay and is consistent with erecting this bright line that anything accruing before the close of escrow is the responsibility of the seller and anything accruing after the close of escrow is the responsibility of the buyer. I'll be out with the interpretation of two provisions of the contract. One is the provision that allocates the risk at the time of closing. Now, Mr. Wray believes that this was a risk according to that provision of the contract that was allocated because the buyer did not, went ahead with the contract despite the fact that it was brought to their attention, so he assumed the risk. With the language in the contract that provides that the seller is to provide title free and clear of all monetary liens, which could be obligations, is it your position that the risk of allocation is the provision that applies despite the fact that the other provision in the contract says all monetary liens are the responsibility of the seller? I don't think, well, the two provisions can both yield the same result. They're not mutually, again, they don't cancel one another out. So Mr. Wray's or Commerce's argument is that Greystone agreed to move forward with the agreement. What Greystone did when it moved forward with the agreement was to proceed to close escrow based on what had been reported as the matters that had been recorded against the title. So, for example, you can move forward saying, oh yeah, I know that that covenant is there, I know that that restriction is there. It doesn't alter the fact that the payment obligation was already allocated under the contract under 8.09B to the seller. On top of that, to the extent that this is a monetary lien, 6.01 is also clear that that is an obligation of the seller. 6.01 is quite clear that under no circumstances will unpaid monetary liens be considered permitted title exceptions. It says permitted title exceptions shall not include, and sellers shall remove at its sole expense, at or before the close of escrow, and shall cause the property to be delivered and conveyed free and clear of any and all deeds of trust, mortgages, mechanics liens, notices of list pendants, and or other monetary liens. So there's no inconsistency in the contract. It's not like one provision of the contract says this is your problem and the other says someone else's. So tell me what, you know, obviously it was a quick closing at the end. So why isn't the buyer responsible for, under the contract allocation, when that buyer was made clear to the buyer there's a problem here and that the seller said we're not paying it? Why? Why under those circumstances isn't it the buyer's obligation under the contract? That that particular provision of the contract, which says you're stuck with it essentially, as I think you said in your brief, you're stuck with it. Why? Why weren't they stuck with it? Sure. The short answer is because the contract says that they're not stuck with it. But the longer answer to your question, Your Honor, is that let's be very clear about what Commerce alleges was and was not disclosed in December of 2012 before the close of escrow. Commerce does not suggest, hey, we notified you that this had not been paid and that this was due an owing. That's not what they said. They didn't come clear with that. What Commerce is saying is that they provided answers. Grayston said, well, just in case, will you indemnify us for this? Commerce said, no, we don't want to do that. And so Commerce is saying, well, based on that, then that must mean that our interpretation of the contract is correct. But the plain language of the contract only supports one interpretation, namely that all monetary obligations accruing prior to the close of escrow were the responsibility of the seller and all monetary obligations accruing after the close of escrow were the responsibility of the buyer. Isn't this what really happened here is Commerce hit the ball. They should have known whether they paid the impact fee. It's two payments of $400-something thousand. I presume it's on their ledger. They took advantage of it. The city itself really didn't know. They had bad records. And Commerce hit the ball. And, you know, the other side, at the end, the contract really didn't address it directly here. I don't think anyone really thought about whether the language includes something like an impact fee. Perhaps the language of the contract here covers it, maybe. It's broad. On the other hand, maybe not. You know, it seems like the word assessment and tax bonds there are about periodic payments. So why isn't this a factual issue? I mean, you can make your case before a jury that, you know, Commerce hit the ball at the last minute and pressured and et cetera, and maybe the agreement, you can cite custom and usage in the industry of what assessment means and just send it to a jury. Sure. In your question, you used an important phrase. You said periodic payment. There's no requirement under 8.09 that it be a periodic payment. But if you look at it, I mean, taxes, real property taxes are usually paid every year. Bonds, usually it's over duration of the bond. SIDs, LIDs, typically whatever monthly payment, quarterly payment, they all seem periodic. So assessment would presumably be like that. May I offer an example of an assessment that's not periodic that would clearly be covered by this? If you're a member of a homeowner's association, you pay periodic HOA dues monthly, quarterly, or annually. But sometimes your HOA also levies a special assessment. You have an unusual bill that comes up. There's nothing in the language of this that would suggest that such a one-time payment to an HOA, which is clearly a kind of assessment, it's a special assessment, and NRS 116 talks about special assessments as a kind of assessment. There's no suggestion that that would not be required, or that would not be covered. Just because many of the things in here are periodic does not mean that it is limited to things which are periodic. So I'm looking at 6.01, which Mr. Ray is relying on. In the language, it says upon buyer's approval of the feasibility review, buyer shall be deemed to have approved covenants, conditions, restrictions. That's not applicable in my view, but you can tell me otherwise. Rights of way, easements, reservations, and other matters of record. Why isn't this another matter of record that was approved by the buyer? Approving the fact that the instrument is recorded is not the same thing as assuming the pre-closing obligation to make the payment. So what you're saying is that this particular circumstance, which arose at the last minute, which was the impact fee, was not a matter of record, although it was brought to the attention of the buyer? No, the phase three agreement was a matter of record, but the obligation to make the payment is covered by 8.09. That was the point I was trying to make earlier, that the two are not mutually exclusive. Something can be both a matter-affecting title under 6.01 and also give rise to a payment obligation. Great. Thank you. Thank you so much. I respectfully disagree with my colleague, and thank you, by the way, for these extra two minutes of stoppage time. I'm really appreciative of this. Make no mistake, an HOA is a classic assessment. We understand that completely. By the way, foreclosable to enforce it, exactly what we're talking about when you talk about a prorated item. And by the way, you are correct, Your Honor, the contract says non-delinquent items are the things that get prorated. Anything delinquent is obviously the obligation of the seller. A delinquent assessment, a delinquent tax, anything, but not what we're talking about here, which is covered by Section 6.01 and 7.01, which is a matter of title. If we don't have this ---- And I'm looking at the language, Mr. Wray, and I read that it said matters of record. Yes. As disclosed in the title report. So this is ---- is that what you're ---- is that the language you're relying on? Yes, as ---- Does that mean it's not an easement, it's not a right-of-way, it's not a restriction, conditions, covenants? It falls in the category matter of record? Absolutely. Of course it is. And why? How is it a matter of record? It's recorded, and it shows up in a title report. If you did a title report today, it shows up. When you say record, where ---- I'm sorry. Clark County, Nevada, Clark County Office of the Recorder. So it's a matter of record. That's ---- if we don't have what happens in 6.01 and 7.01, we're not going to be having due diligence periods at all because it would make no difference. Why bother with due diligence if it doesn't mean anything? At the end of that, someone either approves or disapproves of the due diligence and decides to go forward. That's key. That's what's so important. And we fulfilled every obligation. We didn't hide the ball. Okay. So let me ask you this. So you said something that was rather interesting. You said that these impact fees, this requirement that it be paid by Commerce, was recorded? Was it in the county recorder's office, like a lien? Yes. Not like a lien. It's not a lien. It's a matter of ---- it's an exception to title. For example, an easement or ---- I mean, it was recorded? It was ---- I don't have the information from any of the facts that it was.   I'm sorry. They didn't seek to collect it, right? So, in a way, the counsel's position is it wasn't delinquent until they seek to collect it. But I didn't see anything in the record that indicated that it had been recorded. Yes, I'm sorry. My oversight. The evidence was, in court, undisputed, that it showed up as an exception to title in a title commitment, i.e., a preliminary title report, saying these are the matters that show up. If you look at your property, you're taking this property subject to the following things. And one of them ----  But was it recorded? Once the obligation arose in 2005, did the city record it? No. They waited until 2006. That's what I'm saying. They recorded it after the fact. After it was delinquent, they recorded it, believe it or not. I know. The city just dropped the ball completely. But this happened 8 years, Your Honor, before December of 2012, 8 years earlier. So no one knew in the 24 hours or less than that, on one business day, exactly the status of this payment. And they're complaining about that? They raised it on the very last of the 30th day of the thing. I also wanted to say, please understand, the judge said, Your Honor, we are liable for all debts. All debts accruing prior to the close of heaven, just like counsel said, my colleague said it, right to you. That's not true. We're not liable for all debts accruing prior to close. We're not liable for that. It's not what it says. We're not liable for things they approve as matters of record. We're not. I think you made your point. We've given you plenty of time. I'm so sorry. Thank you very much. Thank you both for the helpful argument. The case has been submitted.
judges: THOMAS, LEE, Silver